IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TECORE, INC.<br>7030 Hi Tech Drive<br>Hanover, MD 21076<br><br>　　Plaintiff<br><br>v.<br><br>THE REPUBLIC OF YEMEN<br>c/o Embassy of the Republic of Yemen<br>2319 Wyoming Avenue, N.W.<br>Washington, DC  20008<br><br>　　Defendant | CIVIL CASE NO.: |

## COMPLAINT

Plaintiff, Tecore, Inc. ("Tecore" or "Plaintiff"), by its undersigned counsel, hereby files this Complaint against the Republic of Yemen ("Yemen" or "Defendant"), and states:

## PARTIES

1. Tecore is a Texas corporation. At all times relevant to this dispute, Tecore has maintained its principal place of business at 7030 Hi Tech Drive, Hanover, MD 21076. Tecore is a wireless telecommunications infrastructure integrator and supplier. From its facility in Maryland, Tecore assembles, integrates, tests, sells, and throughout the world provides support services and personnel for the deployment of wireless communications networks. Tecore supplies network components including core network hardware and software and radio access network hardware and software integrated, configured, and tested in the United States and shipped to customer site locations such as to Yemen in this case. Tecore offers its customers individual components and complete solutions. Complete solutions are stand-alone cellular telecommunications networks, which may be operated privately or connected to commercial

carrier networks. Tecore's contracts with foreign governments, as is the case here, involve the movement of products, communications and services between the United States and Tecore's customer, in this case, the Republic of Yemen. Tecore relies upon payment from its customers to maintain its offices, operations and personnel in Maryland. If payments are not made pursuant to Tecore's contracts with its customers, the failure of payment causes direct effects in the United States, as described more fully below.

2. Yemen is a foreign state within the meaning of 28 U.S.C. § 1603(a).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330 in that this is a civil action for breach of contract against a foreign state, Yemen.

4. This Court has jurisdiction over Yemen under 28 U.S.C. §§ 1605-1607 because this action is based upon a commercial activity carried on in the United States by Yemen; and/or upon an act performed in the United States in connection with a commercial activity of Yemen in that country; and/or upon an act outside the territory of the United States in connection with a commercial activity of Yemen in that country and that act caused a direct effect in the United States – that is, disruption to the movement of products, communications, data and services between the United States and Yemen, as well as damages to Tecore arising from Defendant's breach of contract, in particular, Yemen's failure to pay money due and owing to Tecore in the United States, as alleged herein.

5. This Court's jurisdiction over Yemen is not limited by any applicable international agreement.

6. In addition, Yemen waived any claim of immunity to this Court's jurisdiction by agreeing that the contract in question would be "governed and construed under the laws of the

United States of America" and to the "exclusive venue" for any dispute to be "in the geographical location of the U.S. District Court for the 4th Circuit." [sic].  *See* **Exhibit A**, Master Purchasing Agreement ("MPA"), ¶ 8.

7. Similar choice of law and venue provisions are set forth within additional agreements that are exhibits to and incorporated into the parties' Master Purchasing Agreement. *See* MPA Exhibit 2, End User License Agreement, ¶ 10.5 (applying Maryland law and mandating Maryland venue); MPA Exhibit 3, Warranty and Support Services Agreement, ¶ 4.4 (applying United States law and mandating Fourth Circuit venue); MPA Exhibit 4, Extended Support Services Agreement, ¶ 9 (applying United States law and mandating Fourth Circuit venue); MPA Exhibit 6, Non-Disclosure Agreement, ¶ 9 (applying Maryland law and mandating Maryland venue).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f) in that a substantial part of the events giving rise to this action occurred in Maryland.  Further, the parties' written agreement provides for "exclusive venue in the geographical location of the U.S. District Court for the 4th Circuit."  Exhibit A, Master Purchasing Agreement, ¶ 8.

## FACTUAL ALLEGATIONS

I. **The MPA and Yemen's Breach of the MPA.**

9. In or about November 2018, a representative from the Embassy of Yemen in Washington, DC contacted a representative of Tecore in Maryland and expressed an interest in procuring from Tecore a private, secure wireless telecommunications network.  Over approximately the next two years, the parties engaged in negotiations for a contract that would achieve Yemen's goal of deploying such a network.

10.     On or about February 2, 2022 (the "Execution Date"), Tecore and Yemen entered into the Master Purchasing Agreement.  Yemen signed the MPA on January 27, 2022 and the MPA became fully executed on February 2, 2022 when it was signed that day by a Tecore representative located Maryland.  A true and accurate copy of the MPA is attached hereto as Exhibit A and is incorporated herein by reference.

11.     Greg J. Melus ("Melus") of the Washington, DC law firm Tully Rinckey, PLLC (the "Tully Firm") was Yemen's designated agent for purposes of negotiating the MPA.  On Yemen's behalf, Melus negotiated the MPA with representatives of Tecore located in Maryland.

12.     Under the MPA, Tecore was to produce and configure the equipment and required software in Maryland and sell, ship to, and provide on-site personnel to oversee the deployment in Yemen of an LTE Cellular Network, with forty LTE cellular sites (the "Project").  From its offices in Maryland, Tecore was also to provide Yemen certain remote services, such as technical support and training and, on an ongoing basis, provide Yemen with access to all software changes, fixes and upgrades.  In consideration, pursuant to Paragraph 3 of the MPA, Yemen agreed to pay the sum of $6,000,000 (the "Project Cost") to Tecore in the United States.  Specifically, Paragraph 3 of the MPA required that all payments to Tecore be made via electronic funds transfer to Tecore's account at a branch of Citibank, FSB (the "Citibank Account") located in Washington, DC.  Also pursuant to Paragraph 3 of the MPA, fifty percent of the Project Cost, or $3,000,000 (the "Initial Payment"), was due to be paid to Tecore on the Execution Date, with the balance of $3,000,000 being due six months following completion and closeout of Phase One of the Project.  Under Paragraph 3 of the MPA, the Initial Payment constituted "a non-refundable commitment" by Yemen.

13.     Pursuant to Paragraph 2.1 of the MPA, the Project was to be completed in two phases. Phase one of the Project included deployment of the LTE Cellular Core Network and ten LTE cellular sites in Yemen ("Phase One"), along with the sale of the equipment and software required to deploy Phase One (the "Phase One Equipment"), plus the provision of on-site and remote services in Yemen and the United States, respectively.  Phase two of the Project included deployment of thirty LTE cellular sites in Yemen ("Phase Two"), along with the sale of the equipment and software required to deploy Phase Two (the "Phase Two Equipment"), plus the provision of on-site and remote services in Yemen and the United States, respectively.  Under the MPA, Tecore was also to procure, sell, and ship to Yemen certain off-the-shelf equipment and supplies (the "Ancillary Equipment" and, collectively with the Phase One and Phase Two Equipment, the "Equipment"), such as antennas, power supplies, cables and mobile phones required for completion of the Project.

14.     In anticipation of the execution of the MPA, from its principal place of business in Maryland, Tecore prepared the Phase One Equipment for shipment to Yemen.  Tecore notified Yemen that the Phase One Equipment was ready for shipment (the "Shipment Notification") from Tecore's Maryland facility to Yemen.  The Shipment Notification triggered an obligation on the part of Yemen under Paragraph 2.2 of the MPA to designate a representative to review the Phase One Equipment at Tecore's Maryland facility and accept it for shipment from that location.  In addition, the Ancillary Equipment for Phase One (the "Phase One Ancillary Equipment") was procured in Turkey and was prepared in Turkey for shipment to Yemen.  The Phase One Equipment and the Phase One Ancillary Equipment that were prepared by Tecore for shipment met all requirements for such equipment under the MPA.

15. Yemen failed to make the Initial Payment on the Execution Date as required by the MPA. Such failure constituted a breach of the MPA.

16. Without waiving its rights under the MPA or the remedies available to it upon a breach by Yemen, upon being advised by Melus that Yemen was unable to pay the full Initial Payment on the Execution Date, in good faith, Tecore agreed to accept and, on or about February 8, 2022, did receive a partial Initial Payment in the amount of $500,000 (the "Partial Initial Payment"). Despite assurances that the remaining balance would be paid, Yemen has never paid any further amounts due and owing to Tecore under the MPA.

17. On February 8, 2022, a representative of Yemen traveled to Istanbul to inspect the Phase One Ancillary Equipment and approved its shipment to Yemen. The Phase One Ancillary Equipment was thereafter shipped to Yemen. Yemen accepted delivery of and still retains possession of the Phase One Ancillary Equipment.

18. In breach of the MPA, Yemen has never inspected or approved for shipment the Phase One Equipment which, as of the filing of this Complaint, remains dedicated to the MPA and is in storage at Tecore's Maryland facility awaiting shipment to Yemen.

19. Notwithstanding that the MPA does not provide a basis for termination, on or about July 18, 2022, a representative of Yemen from the Embassy of Yemen in Washington, DC orally informed a representative of Tecore of Yemen's decision to terminate the MPA. Yemen's termination of, and its refusal to go forward with, the MPA constitutes a breach of the MPA.

20. At the time of Yemen's breach of the MPA, Tecore was, and as of the filing of this Complaint remains, ready, willing and able to perform its obligations under the MPA.

**II.    The MPA Itself Constitutes a Commercial Activity of Yemen Carried out in the United States and it Involves Commercial Activities Carried Out Within the United States and Acts in Yemen Which Have Substantial Effects in the United States.**

21.   Yemen approached Tecore through its embassy personnel located in the United States and sought to engage Tecore in procuring a private, secure wireless telecommunications network, the purchase of which was a commercial activity in the United States by Yemen.

22.   As set forth in Paragraph 6 of the MPA, Tecore negotiated for and received contractual rights of communication and notices with Yemen's representative in the United States. Specifically, Paragraph 6 of the MPA designates Melus as Yemen's "Admin/Legal Point of Contact" for the purpose of receiving notices under the MPA.

23.   By designating Melus of the Washington, DC based Tully Firm as its "Point of Contact" for purposes of the MPA, Yemen acknowledged that Melus assisted Yemen in carrying out commercial activities in the United States. In connection with its representation of Yemen in dealing with Tecore regarding the MPA, in September 2021, the Tully Firm registered with the US Department of Justice pursuant to the Foreign Agents Registration Act of 1938. In its registration papers, the Tully Firm stated that it was providing legal services to Yemen "regarding the negotiation and execution of contracts for the procurement of telecommunications services."

24.   Many provisions of the MPA required performance by Tecore in the United States. Specifically, Tecore's responsibilities under the MPA included at least the following activities to be performed by Tecore personnel in the United States:

   a) Assemble and configure the Equipment and software necessary for the Project;

   b) Prepare assembled Equipment for shipment from the United States to Yemen;

   c) Assist on-site personnel with the deployment and commissioning of the LTE Network and LTE cellular sites;

   d) Coverage validation;

  e) System adjustment and tuning;

  f) Functional testing;

  g) Address Tier 3 technical issues that cannot be resolved by on-site personnel;

  h) Provide access to, and engineering and configuration for, software changes, fixes and upgrades;

  i) Warranty service; and

  j) Provide training to Yemen personnel with respect to the operation, administration and maintenance of the Equipment and related software.

By necessity, all such activities would be performed by Maryland-based personnel supplied by Tecore and would involve communications and/or the transmission of data between the United States and Yemen.

  25. Under the MPA, Yemen had substantial responsibilities which were to be performed in the United States. For example, payments to Tecore were to be made in dollars by wire transfer to Tecore's Citibank Account located in the United States. Further, upon being notified that the Phase One and Two Equipment was ready for shipment, Yemen was required to designate a representative to review such equipment at Tecore's Maryland facility and accept it for shipment to Yemen. Yemen also was required to maintain Melus as its contractually designated United States-based "Admin/Legal Point of Contact."

  26. Any of Tecore's responsibilities under the MPA which were to be performed in Yemen were to be carried out by Tecore personnel supported by Maryland-based personnel acting on instructions, techniques, training and manuals developed, maintained and updated by Tecore personnel in the United States.  For example, the MPA required Tecore to provide a field engineer on-site in Yemen during Phase One to (i) oversee the deployment and commissioning of the LTE Cellular Network and LTE cellular sites to be deployed from the Phase One Equipment, (ii)

provide on-site training and guidance to Yemen's local field team, and (iii) serve as a liaison between Yemen's local field team and Tecore's technical contact.  The field engineer would also coordinate the acceptance test plan; provide coverage validation; provide training to Yemen personnel with respect to the operation, administration and maintenance of the Equipment and related software; assist in diagnosing and isolating any issues that arise from regular operation of the system; and carry out a final inspection.

27. All of the activities carried out by the Tecore field engineer in Yemen were to be conducted in coordination with, and with the support of, Tecore's United States based personnel, United States based software and engineering, and with the financial resources of Tecore based in the United States being deployed as necessary to fulfill Tecore's obligations under the MPA.

28. Yemen's breach of the MPA caused direct effects in the United States, including the disruption to the movement of products, communications, data and services between the United States and Yemen.  Collectively, these included the shipment of the Phase One and Phase Two Equipment to Yemen, the delivery of future software updates and fixes, and the performance of the support, technical, warranty, training, and other services that were to remotely be provided by Tecore.  Yemen's failure to deposit the full amount of the Initial Payment into the Citibank Account and, ultimately, the damages incurred by Tecore as alleged herein also constituted direct effects in the United States caused by Yemen's breach of the MPA.

### Count I -  Breach of Contract (Failure to Pay Initial Payment)

29. The allegations in the foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

30. The Initial Payment was due and payable on the Execution Date and, under the terms of the MPA, was non-refundable.

31. Yemen's failure to make payment in full of the non-refundable Initial Payment on the Execution Date constituted a breach of the MPA.

32. As a result of such breach, Tecore incurred damages in the amount of $2,500,000, representing the difference between the amounts of the Initial and Partial Initial Payments.

WHEREFORE, Plaintiff, Tecore, Inc., demands judgment against the Republic of Yemen in the amount of $2,500,000, plus prejudgment interest, interest from the date of judgment, the costs of this action and such other and further relief as this Court deems just and proper.

**Count II -  Breach of Contract (Lost Profits and Incidental Damages)**

33. The allegations in the foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

34. Yemen's termination of the MPA constitutes a breach of the MPA.

35. Tecore has incurred damages as a result of Yemen's breach of the MPA.  Such damages include the loss of profits in an amount not less than $5,000,000, which profits Tecore would have enjoyed from the sale of goods and the provision of services to be provided under the MPA, as well as the recovery of a reasonable overhead, had the MPA been fully performed.

36. In addition, although certain of the Phase One Equipment can be repurposed and reconfigured for sale to a third-party purchaser, Tecore will incur costs in an amount not less than $600,000 to prepare such equipment for sale to a third-party purchaser.  Such costs are recoverable as incidental damages arising from Yemen's breach of the MPA.

WHEREFORE, Plaintiff, Tecore, Inc., demands judgment against the Republic of Yemen for its lost profits and incidental damages in an amount to be proven at trial, but not less than $5,600,000, plus prejudgment interest, interest from the date of judgment, the costs of this action and such other and further relief as this Court deems just and proper.

### Count III -  Breach of Contract (Contract Price of the Phase One Ancillary Equipment and Certain Phase One Equipment)

37. The allegations in the foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

38. Before Yemen's improper termination of the MPA, Tecore delivered, and Yemen accepted and still retains possession of, the Phase One Ancillary Equipment.  The contract price for the Ancillary Equipment accepted by Yemen is $300,282.

39. Since Yemen's improper termination of the MPA, Tecore has made reasonable, but unsuccessful efforts to resell certain of the Phase One Equipment identified to the MPA (the "Unsaleable Equipment") to potential third-party purchasers, including at a discounted price. These unsuccessful efforts included outreach to a number of contacts and current and former customers who were not interested, primarily because by the late 2022/early 2023 timeframe, parties shopping for network equipment were interested in purchasing 5G equipment and not 4G equipment, which is what Yemen had contracted to purchase. The contract price for the Unsaleable Equipment is $3,412,428.

40. As a result, Tecore is entitled to recover damages in an amount not less than the sum of $3,712,710, representing the contract price of the Ancillary Equipment accepted by Yemen plus the contract price for the Unsaleable Equipment.

WHEREFORE, Plaintiff, Tecore, Inc., demands judgment against the Republic of Yemen in an amount to be proven at trial, but not less than $3,712,710, plus prejudgment interest, interest from the date of judgment, the costs of this action and such other and further relief as this Court deems just and proper.

- 12 -

August 15, 2023                                    Respectfully submitted,

*/s/ Howard R. Feldman*
Steven E. Tiller (#11085)
Howard R. Feldman (#05991)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
stiller@whitefordlaw.com
hfeldman@whitefordlaw.com

*Attorneys for Plaintiff,
Tecore, Inc.*