**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TECORE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 23-cv-2230-LKG |
| v. ) | |
| ) | Dated: May 12, 2026 |
| THE REPUBLIC OF YEMEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

In this civil action, the Plaintiff, Tecore, Inc. ("Tecore"), brings breach of contract claims against the Defendant, The Republic of Yemen ("Yemen"), arising from Yemen's alleged breach of a Master Purchasing Agreement ("MPA") by and between the parties to provide a private, secure wireless telecommunications network. *See generally* ECF No. 1. Tecore has moved for partial summary judgment on Count I of the complaint, pursuant to Fed. R. Civ. P. 56. ECF Nos. 47 and 47-1. The motion is fully briefed. ECF Nos. 47, 47-1, 48 and 51. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Tecore's motion for partial summary judgment (ECF No. 47) and (2) **ENTERS JUDGMENT** summarily in favor of Tecore on Count I of the complaint as to Yemen's liability for breaching Section 3 of the MPA.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this civil action, Tecore brings breach of contract claims against Yemen, arising from Yemen's alleged material breach of the MPA by and between the parties for Tecore to provide a private, secure wireless telecommunications network in the Republic of Yemen. *See generally*

---

[1] The facts recited in this memorandum opinion are taken from the complaint; Tecore's motion for partial summary judgment and memorandum and exhibits in support thereof; Yemen's response in opposition to Tecore's motion for partial summary judgment; and Tecore's reply brief. ECF Nos. 1, 47, 47-1, 47-3, 47-4, 47-5, 48 and 51. Unless stated otherwise, the facts recited herein are undisputed.

ECF No. 1.  Tecore asserts the following three claims against Yemen in the complaint: (1) breach of contract for failure to pay the Initial Payment; (2) breach of contract for lost profits and incidental damages; and (3) breach of contract for the contract price of the Phase One Ancillary Equipment and certain Phase One Equipment.  *Id.* at ¶¶ 29-40.  As relief, Tecore seeks: (1) a judgment against the Republic of Yemen in the amount of $2,500,000, plus prejudgment interest and interest from the date of judgment; (2) a judgment against the Republic of Yemen for its lost profits and incidental damages in an amount to be proven at trial, but not less than $5,600,000, plus prejudgment interest and interest from the date of judgment; (3) a judgment against Yemen in an amount to be proven at trial, but not less than $3,712,710, plus prejudgment interest and interest from the date of judgment; and (4) to recover costs.  *Id.*

Relevant to the pending motion, Tecore alleges in Count I of the complaint that Yemen materially breached the MPA by failing to fully pay an initial non-refundable payment in the amount of $3 million (the "Initial Payment"), that was due on the execution date of the contract. *Id.* at ¶¶ 30-32.  In this regard, Tecore alleges that Yemen only paid $500,000, as a partial payment (the "Partial Payment") under the MPA.  *Id.* at ¶ 16.  And so, Tecore seeks to recover $2.5 million in damages from Yemen in connection with this claim.  *Id.* at ¶ 32.  Tecore alleges that this damages amount represents "the difference between the amounts of the Initial Payment and Partial Initial Payments" made by Yemen.  *Id.*

The Parties

Plaintiff Tecore is a wireless telecommunications infrastructure integrator and supplier, with its principal place of business located in Hanover, Maryland.  *Id.* at ¶ 1.

Defendant the Republic of Yemen is a foreign state under 28 U.S.C. § 1603(a).  *Id.* at ¶ 2.

The Master Purchasing Agreement

As background, on February 2, 2022 (the "Execution Date"), Tecore and Yemen entered into the MPA, pursuant to which Tecore agreed to provide a private, secure wireless telecommunications network for Yemen's Ministry of Defense.  *Id.* at ¶ 10; ECF No. 47-1 at 2; ECF No. 47-3 at 3.  Under the terms of the MPA, Tecore was to design, supply and deploy a telecommunications network in Yemen in two phases, known as "Phase 1" and "Phase 2."  ECF No. 47-1 at 2; ECF No. 47-3 at 1.  In this regard, the MPA called for Tecore to produce and configure the equipment and required software in Maryland and then to ship these items to

2

Yemen and provide on-site personnel to oversee the deployment of a LTE Cellular Network, with 40 LTE cellular sites in Yemen.  ECF No. 1 at ¶ 12.

There are several provisions of the MPA that are relevant to the pending motion, which are discussed below.

First, Section 1 of the MPA is entitled "Equipment and Services," and this provision provides that Yemen agrees to purchase from Tecore, and Tecore agrees to provide to Yemen, certain equipment and services to provide a private, secure wireless telecommunications network.  ECF No. 47-3 at 1.  Specifically, Section 1 provides as follows:

> By executing this Agreement, [Yemen] is agreeing to purchase from [Tecore] and [Tecore] is agreeing to provide to Customer the equipment and services defined within the Purchasing Documents (hereinafter: Project), attached hereto and incorporated herein as Attachment 1 - Purchasing Documents and refined within Section 4 of this Agreement, the Project Overview attached hereto and incorporated herein as Attachment 2 and the Responsibility Matrix attached hereto and incorporated herein as Attachment 3.

*Id.*

Second, Section 2 of the MPA is entitled "Performance and Acceptance" and this provision describes, among other things, the two phases of the MPA.  *Id.*  Specifically, Section 2.1 of the MPA, which addresses the "Project Phases," provides that:

> Project Phases. This Project shall be delivered in two (2) phases as indicated below:

| Phases | Equipment | Services | Date |
|---|---|---|---|
| Phase 1 | Core Network and Equipment and Ancillaries for ten (10) sites | Onsite and Remote (4.1 b-c) | ARO P1 |
| Phase 2 | Equipment and Ancillaries for thirty (30) sites | Remote (4.1 c) | ARO P2 |

> Purchase Orders detailing the deliverables for each Project phase are attached hereto and incorporated herein in Attachment 1.

*Id.*  Section 2.2 of the MPA, which is entitled "Factory Acceptance," also provides that:

> Factory Acceptance.  [Tecore] shall notify [Yemen] when the equipment for each Phase is ready for shipment. At a mutually designated time, which shall be no later than thirty (30) days after the above shipment notification, [Yemen] shall designate a representative to come to [Tecore's] Maryland Offices (hereinafter: "Factory") to review and accept shipment consistent with the

3

Certificate of Acceptance attached hereto and incorporated herein as Exhibit 1. If due to unforeseen circumstances, [Yemen's] representative be unable to review and accept the shipment at the Factory on [Yemen's] behalf within the designated time, [Tecore] and [Yemen] agree process acceptance of such equipment virtually via video conference or detailed photographs. Once accepted, [Tecore] shall ship the equipment to [Yemen's] designated location.

*Id.*

Third, Section 3 of the MPA is entitled "Payment" and this provision governs Yemen's payments to Tecore under the MPA. *Id.* Specifically, Section 3 provides that:

Payment. The Parties agree to the below stated Equipment and Services Payment Schedule:

| Payment | Due Date | Amount |
|---|---|---|
| P1 | Execution Date | 50% Total Project Cost |
| P2 | Execution of Inspection and Closeout Documentation for P1 +6 Months | 50% Total Project Cost |

For the alleviation of doubt, all payments shall be made in USD, via wire payment to Tecore Networks as indicated on Invoicing. Wire confirmation must be sent to [Tecore's] Administrative Contact via email. The [Yemen] understands and agrees that once payment has been made subject to Attachment 1 and pursuant to the Agreement, it shall be considered a non-refundable commitment.

*Id.*

Fourth, Section 13 of the MPA is entitled "Attachments and Exhibits" and this provision incorporates the Attachments and Exhibits to the MPA. *Id.* at 3. Specifically, Section 13 of the MPA provides that:

Attachments and Exhibits. The following list of Attachments and Exhibits are attached herein and incorporated hereto. For the alleviation of doubt, this Agreement with its Attachments and Exhibits shall constitute one (1) Agreement and shall take precedence over all other previous or contemporaneous agreements or communication.

| | |
|---|---|
| Attachment 1 | Purchasing Documents |
| Attachment 2 | Project Overview |
| Attachment 3 | Responsibility Matrix |
| Exhibit 1 | Certificate of Acceptance |
| Exhibit 2 | End-User Licensing Agreement |
| Exhibit 3 | Warranty and Support Services Agreement |
| Exhibit 4 | Extended Support Services Agreement |

4

| Exhibit 5 | Training Support Overview |
|---|---|
| Exhibit 6 | Mutual Non-disclosure Agreement |

*Id.*

In this regard, the Purchasing Documents found in Attachment 1 to the MPA describe the network equipment, ancillary equipment, professional services and warranties and support that Tecore would provide under the MPA, as well as shipping costs and expansion options. *Id.* at 5-8; ECF No. 48 at 3. In addition, Attachment 1 to the MPA provides that the "Project Total" cost would be $6,000,000.00. ECF No. 47-3 at 6.

Lastly, Exhibit 4 to the MPA is an Extended Support Services Agreement, which governs the support services that Tecore was to provide and addresses, among other things, dispute resolution and the recovery of attorney's fees and costs. ECF No. 47-4 at 27. Specifically, Section 13 of the Extended Support Services Agreement provides that:

> PREVAILING PARTY. In the event a dispute arising under this Agreement results in litigation or alternative dispute resolution, the non-prevailing party shall pay the court, mediation or other administrative costs and reasonable attorneys' fees of the prevailing party.

*Id.* at 27.

Yemen's Initial Payment

The facts regarding Yemen's payment to Tecore are undisputed. The parties agree that Yemen paid Tecore $500,000 on February 8, 2022, approximately six days after the Execution Date of the MPA, and that this payment is the only payment that Yemen has made to Tecore under the MPA. ECF No. 47-1 at 2; ECF No. 47-5 at 3 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 9-10); ECF No. 48 at 4. The parties also agree that the amount of the Initial Payment under the MPA is $3 million. ECF No. 47-1 at 2; ECF No. 47-5 at 2 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 7); ECF No. 48 at 4.

In this regard, Yemen admits in its responses to Tecore's Requests for Admission that it failed to make a full timely payment of the Initial Payment on the Execution Date of the MPA. ECF No. 47-1 at 2; ECF No. 47-5 at 3 (Yemen's Responses to Tecore's Requests for Admissions at No. 8); ECF No. 48 at 4. Yemen also admits that the Total Project Cost for the MPA is $6 million and that Yemen was obligated under the MPA to pay Tecore $3 million on the Execution Date of that agreement. ECF No. 47-5 at 2 (Yemen's Responses to Tecore's Requests for Admissions at No. 6-7).

The parties also largely agree about the nature of the work performed by Tecore under the MPA.  In this regard, Yemen acknowledges that Tecore prepared the Phase One Equipment and Ancillary Equipment, as defined under the MPA, for shipment to Yemen.  ECF No. 47-1 at 3; *see id.* at 4 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 13-14).  Yemen also acknowledges that Tecore shipped the Ancillary Equipment for Phase One to Yemen and that Yemen accepted delivery of this equipment.  ECF No. 47-5 at 4 (Yemen's Responses to Tecore's Requests for Admissions at No. 13).

In addition, Yemen acknowledges that Tecore notified Yemen that the Phase One Equipment was ready for shipment from Tecore's Maryland facility, and the parties agree that this equipment was not shipped to, or installed in, Yemen.  *See* ECF No. 1 at ¶ 18; ECF No. 47-3 at 1; *Id.* at 4 (Yemen's Responses to Tecore's Requests for Admissions at No. 14).  In this regard, Tecore contends, and Yemen does not dispute, that Yemen did not assert or show that the Phase One Equipment was defective, or otherwise failed to meet Yemen's specifications or needs.  ECF No. 47-5 at 4-5 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 18-19).

Lastly, it is undisputed that Yemen informed Tecore that it was terminating the MPA on or about July 18, 2022, without providing any explanation for the termination of the contract.  ECF No. 1 at ¶ 19; *Id.* at 4 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 15-17); ECF No. 48 at 4.  And so, Tecore seeks to recover, among other things, $2.5 million damages from Yemen.  ECF No. 1 at 10.

### B.   Relevant Procedural Background

Tecore commenced this matter on August 15, 2023.  *Id.*  On April 25, 2024, Yemen answered the complaint.  ECF No. 18.

On September 15, 2025, Tecore filed a motion for partial summary judgment as to Count I of the complaint, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof.  ECF Nos. 47 and 47-1.

On October 6, 2025, Yemen filed a response in opposition to Tecore's motion for partial summary judgment.  ECF No. 48.  On October 21, 2025, Tecore filed a reply brief.  ECF No. 51.

Tecore's motion for partial summary judgment having been fully briefed, the Court resolves the pending motion.

### III.   LEGAL STANDARDS

#### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

#### B.    Breach Of Contract Claims

To prevail on a breach of contract claim under Maryland Law, the plaintiff must prove: (1)

7

that the defendant owed the plaintiff a contractual obligation and (2) a material breach of that obligation. *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). And so, under Maryland law, the elements of breach of contract are a "contractual obligation, breach, and damages." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at *8 (D. Md. Mar. 23, 2018) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015)).

Damages for breach of contract ordinarily are that sum which would place the plaintiff in as good a position as the plaintiff would have been, had the contract been performed. *Kent MCAP Holdings LP v. Leadtec Services, Inc.*, 2024 WL 3318181, *11 (Md. App. Ct. July 2, 2024) (quoting *Beard v. S/E Joint Venture*, 581 A.2d 1275, 1278 (Md. 1990)). The plaintiff also bears the burden of showing "with reasonable certainty what its damages are." *Allstate Ins. Co.*, 2013 WL 6036694, at *8 (D. Md. Nov. 12, 2013); *see also Nat. Prod. Sols., LLC v. Vitaquest Int'l, LLC*, No. 13-436, 2014 WL 6383482, at *6 (D. Md. Nov. 13, 2014). But, when the Court determines that there was a breach of contract, and the plaintiff fails to provide evidence to support its claim for damages, the plaintiff is entitled to recover at least nominal damages. *See, e.g.*, *PFB, LLC v. Trabich*, 304 F. App'x 227, 228 (4th Cir. 2008) (per curiam).

## IV. LEGAL ANALYSIS

Tecore has moved for partial summary judgment as to Count I of the complaint, pursuant to Fed. R. Civ. P. 56, upon the grounds that: (1) the elements of breach of contract are satisfied, because the MPA is a valid contract, which Yemen materially breached, resulting in damages; (2) Yemen has no valid defense to its breach; (3) summary judgment is appropriate as to liability and damages in the amount of $2.5 million, plus interest and costs; and (4) Tecore is owed its reasonable attorney's fees under the MPA. ECF No. 47-1 at 4-6. And so, Tecore requests that the Court grant its motion for partial summary judgment, enter judgment summarily in its favor on Count I as to liability and damages in the amount of $2.5 million, plus interest and costs and award Tecore reasonable attorney's fees. ECF No. 47 at 1.

In its response in opposition to Tecore's motion, Yemen does not dispute that the MPA is a valid contract, that it materially breached the MPA, and that Yemen has no valid defense to its material breach. *See generally* ECF No. 48. But Yemen argues that Tecore is not entitled to summary judgment on Count I, because there are material facts in dispute about the amount of

Tecore's damages and the MPA does not contain a liquidated damages provision. *Id.* at 7-14. And so, Yemen requests that the Court deny Tecore's motion for partial summary judgment and award Yemen attorney's fees, costs, and disbursements. *Id*. at 15.

For the reasons that follow, the undisputed material facts in this case show that Yemen materially breached the MPA, by failing to timely and fully pay the Initial Payment. But there are material facts in dispute about the amount of damages that Yemen owes to Tecore for this material breach of the MPA. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART Tecore's motion for summary judgment (ECF No. 47) and (2) ENTERS JUDGMENT summarily in favor of Tecore on Count I of the complaint as to Yemen's liability for breach of contract.

### A. Yemen Is Liable For Breaching The MPA By Failing To Make The Initial Payment

As an initial matter, the undisputed material facts in this case show that Yemen materially breached the MPA by failing to pay the full amount of the Initial Payment due to Tecore under the MPA. Under Maryland law, the elements of breach of contract are a "contractual obligation, breach, and damages." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at *8 (D. Md. Mar. 23, 2018) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015)). In this regard, the Fourth Circuit has held that, when the Court determines that there was a breach of contract, but the Plaintiff fails to provide evidence to support its claim for damages, the Plaintiff is entitled to receive at least nominal damages. *See, e.g.*, *PFB, LLC v. Trabich*, 304 F. App'x 227, 228 (4th Cir. 2008) (per curiam).

In this case, the undisputed material facts show that Yemen materially breached the MPA by failing to pay the full amount of the Initial Payment. In this regard, it is undisputed by the parties that the MPA is a valid and enforceable contract by and between Yemen and Tecore. ECF No. 47-1 at 4-5; ECF No. 48 at 2. There is also no dispute that Yemen materially breached the MPA, by failing to fully and timely pay the Initial Payment. ECF No. 47-1 at 2; ECF No. 47-5 at 2-3 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 7, 9 and 10); ECF No. 48 at 4.

Notably, the parties agree that Yemen paid $500,000 of the $3 million Initial Payment on or about February 8, 2022. ECF No. 47-1 at 2; ECF No. 47-5 at 3 (Yemen's Responses to Tecore's Requests for Admissions at No. 9); ECF No. 48 at 4. But Yemen failed to pay the

9

remaining $2.5 million due to satisfy the Initial Payment.  ECF No. 47-1 at 2; ECF No. 47-5 at 2-3 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 7 and 10).  In addition, Yemen concedes that it has no valid defense to its failure to pay the full amount of the Initial Payment.  *See generally* ECF No. 48; *see also* ECF No. 47-5 at 4-5 (Yemen's Responses to Tecore's Requests for Admissions at Nos. 13, 14, 18 and 19).

Given these undisputed material facts, Tecore has shown that Yemen materially breached Section 3 of the MPA and that Yemen is liable to Tecore for this breach.  And so, Tecore is entitled to recover at least nominal damages from Yemen under Maryland law.  *PFB, LLC*, 304 F. App'x at 228.  For these reasons, Tecore has shown that it is entitled to summary judgment as to liability on its breach of contract claim in Count I of the complaint.  Fed. R. Civ. P. 56.

**B.      Summary Judgment Is Not Warranted On Tecore's Requested Damages**

Tecore's motion for partial summary judgment is, however, less persuasive as to the amount of damages that it seeks to recover.  In short, there are material facts in dispute about the costs that Tecore incurred under the MPA prior to the termination of that contract.

Under Maryland law, damages for breach of contract ordinarily are that sum which would place the plaintiff in as good a position as the plaintiff would have been, had the contract been performed.  *Kent MCAP Holdings LP v. Leadtec Services, Inc.*, 2024 WL 3318181, *11 (Md. App. Ct. July 2, 2024) (quoting *Beard v. S/E Joint Venture*, 581 A.2d 1275, 1278 (Md. 1990)).  Tecore, as the plaintiff in this case, bears the burden of showing "with reasonable certainty what its damages are."  *Allstate Ins. Co.*, 2013 WL 6036694, at *8 (D. Md. Nov. 12, 2013); *see also Nat. Prod. Sols., LLC v. Vitaquest Int'l, LLC*, No. 13-436, 2014 WL 6383482, at *6 (D. Md. Nov. 13, 2014).  Tecore has not met its burden for several reasons.

First, the Court reads the plain language of the MPA to show that the costs incurred by Tecore during its performance of that contract are relevant and material to determining the amount of its damages.  Notably, Section 3 of the MPA, which is entitled "Payment," and governs Yemen's payments to Tecore under the MPA, provides, in relevant part, that:

> Payment.  The Parties agree to the below stated Equipment and Services Payment Schedule:

| Payment | Due Date | Amount |
|---------|----------|--------|
| P1 | Execution Date | 50% Total Project Cost |

10

| P2 | Execution of Inspection and Closeout Documentation for P1 +6 Months | 50% Total Project Cost |
|---|---|---|

*Id.* The Court reads this provision to provide that the Initial Payment ("P1") will be "50% Total Project Cost." *Id.* And so, Section 3 of the MPA makes clear that the Initial Payment is a percentage of the total estimated cost of the Project.[2]

While the parties appear to agree that the estimated Total Project Cost under the MPA is $6 million, and that Yemen was obligated to pay Tecore $3 million on the Execution Date of the MPA, the language in Section 3 of the MPA does not state that Yemen will pay Tecore $3 million on the Execution Date. ECF No. 47-5 at 2 (Yemen's Responses to Tecore's Requests for Admissions at No. 6-7); *see also* ECF No. 47-3 at 1. Rather, this provision requires that Yemen pay Tecore 50% of the Total Project Cost.

As Yemen correctly argues, Section 3 of the MPA is not a liquidated damages provision. ECF No. 48 at 12-14. Given this, Tecore's actual costs in performing the MPA are relevant to determining the amount of that Tecore may recover as a result of Yemen's breach of Section 3 of the MPA.

Second, the statute and caselaw relied upon by Tecore do not support its damages claim. In its reply brief, Tecore points to Md. Code Ann., Com. Law § 2-709(1) to support its claim to recover $2.5 million in damages from Yemen. ECF No. 51 at 3. This statute appears to address the price due to a seller of goods in the event of a breach of contract. *See* Md. Code Ann., Com. Law § 2-709. But, here, it is undisputed that the MPA is a contract to provide both equipment and professional services. *See* ECF No. 47-3 at 1 and 4-5. Tecore also fails to explain how the cases that it relies upon, which generally address contracts for the sale of goods, show that it is entitled to recover $2.5 million in damages from Yemen. *See* ECF No. 51 at 4.

Lastly, the record before the Court also makes clear that there are material facts in dispute about the costs that Tecore incurred under the MPA prior to the termination of that contract. For example, Yemen argues, and Tecore does not dispute, that Tecore has not provided receipts or other evidence to show the prices paid for the equipment that Tecore purchased under the MPA.

---

[2] Neither Tecore, nor Yemen directly address the plain text of Section 3 of the MPA, or how this language might impact the amount of Tecore's damages. *See generally* ECF Nos. 47-1, 48 and 51. Nonetheless, the Court finds that the text of the MPA is relevant and material to resolving the issues of liability and damages in this case.

11

ECF No. 48 at 9-10; ECF No. 51 at 5.  Yemen also argues, and Tecore does not dispute, that Tecore has failed to provide receipts or other evidence to show the costs incurred for the services that Tecore performed under the MPA, for, among other things, shipping the "Phase One Equipment" called for under that agreement to Yemen.  ECF No. 48 at 11; ECF No. 51 at 5.

The parties agree that these facts are in dispute.  *See* ECF No. 48 at 9-12; ECF No. 51 at 4-5.  The Court also agrees with Yemen that these facts are material to determining the amount of Tecore's damages under Count I of the complaint.

Because there are genuine disputes of material fact regarding the costs that Tecore incurred under the MPA, Tecore simply has not shown that the undisputed material facts in this case show that it is entitled to recover damages in the amount of $2.5 million from Yemen, as a result of Yemen's material breach of Section 3 of the MPA.  And so, the Court DENIES Tecore's motion for partial summary judgment as to Tecore's request for damages.[3]

## V.   CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** Tecore's motion for partial summary judgment (ECF No. 47); and

(2) **ENTERS JUDGMENT** summarily in favor of Tecore on Count I of the complaint as to Yemen's liability for breaching Section 3 of the MPA.

The parties are **DIRECTED** to **FILE** a joint status report, **on or before July 1, 2026**, stating their respective views about status of the case, including the status of their settlement conference, and, if warranted, proposing a schedule for further proceedings.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[3] Because the Court denies Tecore's motion for partial summary judgment as to damages, the Court declines to address the issue of whether Tecore may recover attorneys' fees from Yemen, and the amount of such fees.